No. 7:2022-CV-178-FL

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

MELODY RODGERS,

Appellant,

v.

UNITED STATES GOVERNMENT, ET AL.,

Appellees

**BRIEF FOR THE APPELLANT**

Appeal from the Judgment of the United States District Court

Eastern District of North Carolina entered on January 6, 2023

7:22-CV-178-FL

(Hon. Louise w. Flanagan)

MELODY RODGERS
201 W BAYSHORE BLVD
JACKSONVILLE, NC 28540

**Appellant**

RECEIVED
2023 FEB 06 PM02:20
U.S. COURT OF APPEALS
FOURTH CIRCUIT

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION..................................................................................3

STATEMENT OF ISSUES ............................................................................................3

STATEMENT OF THE CASE AND RELEVANT FACTS ....................................................3

SUMMARY OF ARGUMENT ........................................................................................4

STANDARD OF REVIEW .............................................................................................5

ARGUMENTS.............................................................................................................5

   A.     THE TRIAL COURT ENGAGED IN DISABILITY DISCRIMINATION AGAINST THE PLAINTIFFS IN THE TRIAL CASE, BY DENYING THEM THE USE OF AUXILIARY AIDS. ...................................................................................5

   B.     WHETHER THE TRIAL COURT VIOLATED THE GOVERNMENT PAPERWORK ELIMINATION ACT..................................................................10

   C.     THE TRIAL COURT VIOLATED THE APPELLANT'S RIGHT TO A FAIR TRIAL WHEN IT DENIED HER THE RIGHT TO CHALLENGE THE APPELLEES' MOTION TO DISMISS....................................................................................11

CONCLUSION ..........................................................................................................11

CERTIFICATE OF COMPLIANCE ................................................................................12

CERTIFICATE OF SERVICE .......................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Dole v. United Steelworkers of Am.*, 494 U.S. 26, 32 (1990) ....................................................... 12

*Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 391 (4th Cir. 2011) ................................. 8, 9

*Feldman v. Pro. Football, Inc.*, 419 Fed.Appx. 381, 391 (4th Cir. 2011) ................................. 8

*Fuentes v. Shevin,* 407 U.S. 67 (1972) 80 ........................................................................ 13

*Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019). .................................................. 11

*In re Murchison,* 349 U.S. 133, 136 (1955). ...................................................................... 13

*Johns v. Holder*, 678 F.3d 404, 408-09 (6th Cir. 2012) ..................................................... 13

*Koon v. United States*, 518 U.S. 81, 100 (1996) ................................................................... 5

*McGann v. Cinemark USA, Inc.*, 2016 U.S. Dist. LEXIS 45332 (W.D. Pa., Apr. 4, 2016), ...... 9

*Myers v. Hose,* 50 F.3d 278, 281 (4th Cir. 1995) ............................................................... 11

*Suarez-Diaz v. Holder*, 565 F. App'x 414, 422-23 (6th Cir. 2014) ...................................... 13

*United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011) ................................................. 5

**Statutes**

28 CFR 36.303(a) ........................................................................................................................ 7

28 CFR 36.303(c) ........................................................................................................................ 7

28 CFR 36.303(c)(1) .................................................................................................................... 7

28 CFR 36.303(c)(1)(ii) ..................................................................................................... 8, 9, 10

28 CFR 36.303(c)(3)(ii) ........................................................................................................ 9, 10

28 U.S.C. § 1292 ......................................................................................................................... 2

42 U.S.C. 12182(a) ..................................................................................................................... 6

42 U.S.C. 12182(b)(2)(A)(iii) ............................................................................................... 6, 10

44 U.S.C. § 3501 ................................................................................................................. 12, 13

Federal Rule of Appellate Procedure 32(a)(5) .......................................................................... 16

Federal Rule of Appellate Procedure 32(a)(6) ................................................................ 16

Federal Rule of Appellate Procedure 32(a)(7)(B) ........................................................... 16

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) ..................................................... 16

Federal Rule of Appellate Procedure 32(a)(7)(C), .......................................................... 16

**Other Authorities**

.S. Dep't of Justice, Civil Rights Division, The Americans with Disabilities Act: Title III

    Technical Assistance Manual III-4.3200 ................................................................ 8

## STATEMENT OF JURISDICTION

1. The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Plaintiffs' claims arise under federal law. In the Trial Court, Plaintiffs sought relief under *inter alia,* 42 U.S.C. § 1983; 42 U.S.C. § 1988; 42 U.S.C.§ 1985; 42 U.S.C.§ 1986; Monell-Related Claims; RICO conspiracy to commit fraud; 28 U.S.C. § 1361; and Bivens Claims.

2. The district court entered an interlocutory judgment denying Appellant's motion to intervene, on January 6, 2023. Accordingly, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1292 because the Appellant is appealing an interlocutory decision.

## STATEMENT OF ISSUES

3. Whether the Trial Court engaged in disability discrimination against the Plaintiffs in the Trial Case, by denying them the use of auxiliary aids.

4. Whether the Trial Court Violated the Government Paperwork Elimination Act.

5. Whether the Trial Court violated Plaintiffs' rights when it denied them chance to oppose the Appellees' Motion to Dismiss.

## STATEMENT OF THE CASE AND RELEVANT FACTS

6. The Plaintiffs in the Trial Court filed their Complaint on or about October 11, 2022, asserting claims under 42 U.S.C. § 1983; 42 U.S.C. § 1988; 42 U.S.C.§ 1985; 42 U.S.C.§ 1986; Monell-Related Claims; RICO conspiracy to commit fraud; legal malpractice; medical malpractice; breach of fiduciary duty; breach of implied and express warranties; unconscionable contracts; 28 U.S.C. § 1361; Bivens Claims; and declaratory and injunctive relief. *See* **Complaint.** Plaintiffs sued the Appellee for violation of civil rights arising out of child custody proceedings held in various states and localities. Plaintiffs are therefore parents of children involved in those child custody proceedings.

7. On December 7, 2022, the Trial Court issued an order dismissing certain Plaintiffs from the case without prejudice, for failing to timely correct deficiencies on notices

of self- representation or financial disclosure statements *See* **Trial Court's December 7, 2022 Order, page 1.** The court also noted that Appellant's filing of records on behalf of other Plaintiffs "gives rise to a suggestion of her representation on behalf of other pro se parties and/or unauthorized practice of law." *See* **Trial Court's December 7, 2022 Order, page 2.** The Court then directed the remaining Plaintiffs to file a response to the order, confirming that each Plaintiff was acting on its own behalf *See* **Trial Court's December 7, 2022 Order, page 3.** The Trial Court also notified the Plaintiffs of their possible removal from the case for failure to prosecute, and for failure to adhere to the Court's orders.

8. On January 6, 2023, the Court issued another order *See* **Trial Court's January 6, 2023 Order.** In this order, the court noted that six Plaintiffs had responded to its December 7, 2022 order. The Court then dismissed the remaining Plaintiffs, including Appellant, from the case, for failure to prosecute and failure to comply with the court's order. *See* **Trial Court's January 6, 2023 Order, page 3.** The Court also denied the Appellant's (and other Plaintiffs') Motions to Intervene. The Court stated that none of the movants seeking intervention met the requirements for intervention of right, under Rule 24(a), or permissive intervention, under Rule 24(b). *See* **Trial Court's January 6, 2023 Order, page 6.**

## SUMMARY OF ARGUMENT

9. The Trial Court judge discriminated upon the Plaintiffs who have disabilities under the ADA. It is notable that the attorneys for the Appellees are allowed to use electronic means of signing and communication, which unfairly advantages them. On the other hand, the pro se Plaintiffs who have disabilities caused by the Appellees are not allowed to use their aids. This is in violation of the Americans with Disabilities Acts because it bars the disabled individuals from accessing public services, which in this case is the court. Accordingly, the Trial Court judge erred in denying Appellant's Motion to Intervene claiming that Appellant was representing the pro se Plaintiffs and acting as their attorney. However, Appellant has not

held herself out to be an attorney. She is only an auxiliary aid, considering the Plaintiffs' disabilities.

10. The Trial Court violated the Government Paperwork Elimination Act, when it denied the Plaintiff's documents because they contained electronic signatures.

11. The Trial Court violated the Plaintiff's right to a fair trial when it denied them their right to challenge the Appellees' motion to dismiss.

## STANDARD OF REVIEW

12. This Honorable Court reviews de novo the legal conclusion of the district court, but reviews for clear error the district court's underlying factual findings. *See United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011). Moreover, if the district court errs as a matter of law, it has by definition committed an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.")

## ARGUMENTS

### A. THE TRIAL COURT ENGAGED IN DISABILITY DISCRIMINATION AGAINST THE PLAINTIFFS IN THE TRIAL CASE, BY DENYING THEM THE USE OF AUXILIARY AIDS.

13. Title III of the ADA prohibits public accommodations from discriminating against individuals with disabilities. *See* 42 U.S.C. 12182(a). It expressly requires owners, operators, or lessees of public accommodations to take "such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently because of the absence of auxiliary aids and services". 42 U.S.C. 12182(b)(2)(A)(iii). Failure to take such steps amounts to prohibited discrimination unless the accommodation shows that providing the auxiliary aid or service would fundamentally alter

the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. *Id.*

14. 28 C.F.R. § 36.302 (a) provides for the modifications in policies, practices, or procedures, to accommodate individuals with disabilities. Said provision states that:

> A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations

15. 28 CFR 36.303(a) also provides for auxiliary aids and services for disabled individuals. Said provision states in pertinent part that:

> A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense.

16. 28 CFR 36.303(b) proceeds to define what includes an auxiliary aid. Accordingly, auxiliary aids may include "other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing", "other effective methods of making visually delivered materials available to individuals who are blind or have low vision", or "[o]ther similar services and actions".

17. Further, 28 CFR 36.303(c)(1) provides for the need for effective communication for people with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities. According to said law, "'companion' means a family member, friend, or associate of an individual seeking access to, or participating in, the goods, services, facilities, privileges, advantages, or accommodations of a public

accommodation, who, along with such individual, is an appropriate person with whom the public accommodation should communicate."

18. It is also notable that "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 CFR 36.303(c)(1)(ii).

19. "[T]he type of auxiliary aid that ensures 'effective communication' varies by context." *See Feldman v. Pro. Football, Inc.*, 419 Fed.Appx. 381, 391 (4th Cir. 2011). The DOJ's Technical Assistance Manual for Title III also indicates that the type of auxiliary aid that ensures "effective communication" varies by context. *See* U.S. Dep't of Justice, Civil Rights Division, The Americans with Disabilities Act: Title III Technical Assistance Manual III-4.3200. The regulation contemplates that, like the type of auxiliary aid, the content that must be communicated by auxiliary aids is also context-sensitive. What constitutes "full and equal enjoyment" of a place of public accommodation's goods, services, facilities, and privileges necessarily varies based on what the place provides to visitors and consumers. *See Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 391 (4th Cir. 2011).

20. Further, the law permits a person with a disability to act as such person's auxiliary aid, if such disabled person "specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances." *See* 28 CFR 36.303(c)(3)(ii).

21. In *McGann v. Cinemark USA, Inc.*, 2016 U.S. Dist. LEXIS 45332 (W.D. Pa., Apr. 4, 2016), the Court held that the trial court had erred by determining that the requested tactile interpreter was not an auxiliary aid or service under the Americans with Disabilities Act

7

(ADA). In the words of the Court, "tactile interpreter satisfied the definition of 'auxiliary aid or service'".

22. Also, in *Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 391 (4th Cir. 2011), the Fourth Circuit affirmed a grant of summary judgment in favor of deaf plaintiffs, holding that the ADA required the defendants to provide captioning of the lyrics of popular music played over the public address system at a stadium during professional football games.

23. It is instant action, it is Appellant's contention that by denying Appellant's Motion to Intervene, the Trial Court judge discriminated upon the Plaintiffs who have disabilities under the ADA. The Trial Court judge erroneously stated that Appellant was representing the pro se Plaintiffs and acting as their attorney. However, Appellant has not held herself out to be an attorney. She is only an auxiliary aid, considering the Plaintiffs' disabilities. The Plaintiffs, including Appellant, have mild to severe disabilities. They therefore need electronic aids for communication and for preparing documents.

24. In consideration of the Plaintiffs' disabilities, the Trial Court should have taken such steps as may be necessary to ensure that the Plaintiffs were not excluded or denied the Court's services. *See* 42 U.S.C. 12182(b)(2)(A)(iii). In the circumstances, the Plaintiffs had selected Appellant to be their auxiliary aid. As Appellant has already stated above, the law permits an auxiliary aid for individuals with disabilities, to provide, *inter alia*, provide effective communication to companions who are individuals with disabilities. *See* 28 CFR 36.303(c)(1).

25. Further, as already stated above, the type of auxiliary services needed varies depending on the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. 28 CFR 36.303(c)(1)(ii). In this case, the Plaintiffs had mild to severe disabilities. They therefore need electronic aids for communication and for preparing documents. Since the

Plaintiffs needed effective communication in their prosecution of their case at the Trial Court, Appellant's services are greatly needed.

26. Besides, the Plaintiffs requested Appellant to be their auxiliary aid, and Appellant accepted their requests. This is allowed under the law. *See* 28 CFR 36.303(c)(3)(ii).

27. It is notable that the attorneys for the Appellees are allowed to use electronic means of signing and communication, which unfairly advantages them. On the other hand, the pro se Plaintiffs who have disabilities caused by the Appellees are not allowed to use their aids. This is in violation of the Americans with Disabilities Acts because it bars the disabled individuals from accessing public services, which in this case is the court.

28. Appellant therefore avers that the Trial Court's failure to take such steps, and denying Appellant's Motion to Intervene, amounts to prohibited discrimination. Besides, the Trial Court cannot show that allowing Appellant to be the Plaintiffs' auxiliary aid would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden to the Court. 28 C.F.R. § 36.302 (a) and 28 CFR § 36.304 provide that any policy and procedural barriers must be removed and/or modified, to accommodate individuals with disabilities.

29. Appellant avers that the Trial Court, in denying Appellant's Motion to Intervene, is in violation of the Rehabilitation Act. "To establish a prima facie claim of failure to accommodate under the Rehabilitation Act, a plaintiff must demonstrate that (1) [he or] she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019).

30. In this case, the Plaintiffs and Appellant, are qualified persons with disabilities, as already stated hereinabove. Next, Trial Court is federally funded entity that falls under the

jurisdiction of the Rehabilitation Act. *See Myers v. Hose,* 50 F.3d 278, 281 (4th Cir. 1995) ("[W]here suit is filed against a federally-funded entity under the Rehabilitation Act or against a private employer under the ADA, the substantive standards for determining liability are the same.").

31. Next, in consideration of the Plaintiffs' disabilities, the Plaintiffs needed Appellant's services as an auxiliary aid, in order to prosecute their case at the Trial Court. However, the Trial Court judge denied the Appellant's Motion to Intervene, which action makes the Trial Court judge violate the Rehabilitation Act. It is notable that the law provides no immunity for governmental agents and officials who violate the Americans with Disabilities Act. *See* 28 CFR § 35.130.

## B. WHETHER THE TRIAL COURT VIOLATED THE GOVERNMENT PAPERWORK ELIMINATION ACT

32. The Paperwork Reduction Act of 1980 ("PRA"), 44 U.S.C. § 3501 *et seq.*, "prohibits any federal agency from adopting regulations which impose paperwork requirements on the public unless the information is not available to the agency from another source within the Federal Government." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 32 (1990).

33. Congress enacted the PRA to reduce the federal paperwork burden on individuals, and to minimize the cost to the federal government of collecting and disseminating information. *See* 44 U.S.C. § 3501. Courts "appreciate the goal of reducing the paperwork generated by [the] legal system, and ... will do [its] part ... by dispatching [the] argument quickly—and just once." *Suarez-Diaz v. Holder*, 565 F. App'x 414, 422-23 (6th Cir. 2014) (quoting *Johns v. Holder*, 678 F.3d 404, 408-09 (6th Cir. 2012)).

34. In the instant action, the clerk denied the Plaintiffs' documents because of electronic signatures. Under 44 U.S.C. § 3501, electronic records and their related electronic signatures are not to be denied legal effect, validity, or enforceability merely because they are

in electronic form. Accordingly, the federal government may acknowledge and/or use of a range of electronic signature alternatives. Therefore, in consideration of the Trial Court's obligation(s) under 44 U.S.C. § 3501, the Court erred in failing to acknowledge the Plaintiff's filings.

### C. THE TRIAL COURT VIOLATED THE APPELLANT'S RIGHT TO A FAIR TRIAL WHEN IT DENIED HER THE RIGHT TO CHALLENGE THE APPELLEES' MOTION TO DISMISS.

35. A fair trial is a basic requirement of due process. *See In re Murchison,* 349 U.S. 133, 136 (1955).

36. The right to a notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. *Fuentes v. Shevin,* 407 U.S. 67 (1972) 80.

49. In the instant case, the Trial Court denied the Plaintiffs' documents because of electronic signatures. Accordingly, the Plaintiffs could not file oppositions to the Appellees' Motion to Dismiss. Consequently, the Trial Court went ahead and decided the matter against Plaintiffs, thus dismissing some Plaintiffs from the case.

50. The Trial Court was mandated to provide the Plaintiffs a meaningful and timely opportunity to be heard. This obligation included the duty of the Court to allow Plaintiffs' filings, since the law does not prohibit electronic signatures.

51. Therefore, Plaintiffs' rights to a fair trial were violated when the Trial Court failed to allow Plaintiffs to challenge the Appellees' motion to dismiss.

### CONCLUSION

52. This Honorable Court should rule in favor of Appellant and allow Appellant be the auxiliary aid of the Plaintiffs, and allow them to use electronic devices. The court should also order the Trial Court to modify its customs and procedures to allow for extra time for them to respond. Lastly, this Honorable Court should stay the Trial Court's decision denying

Appellant's Motion to Intervene, and dismissing the Plaintiffs from the case. The Court should also grant a stay from all current motions that are pending from the Appellees until this Honorable Court settles the instant matter.

53. Accordingly, the Appellant prays that this Court issues Judgment for Plaintiff and for the interest of justice and fairness, reverse the District Court's judgment, and remands the case with appropriate instructions. Appellant also prays this Court grant any other Order it deems fit and just.

Respectfully Submitted,

Dated: __FEBRUARY 01, 2023__

*Melody Rodgers*
MELODY RODGERS

**Appellant**

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a) (7)(C), that the attached OPENING BRIEF FOR THE APPELLANT:

1. complies with Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains roughly 2,990 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2. complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2016, in 14-point Times New Roman font.

The undersigned has relied upon the word count feature of the mentioned word processing system in preparing this certificate.

Dated: JANUARY 30, 2023

_____
MELODY RODGERS

**Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that on JANUARY 30, 2023, I sent the foregoing NOTICE OF APPEAL AND APPEAL to the Parties herein to the following respective addresses.

Dated: JANUARY 30, 2023

_____
MELODY RODGERS
201 W BAYSHORE BLVD
JACKSONVILLE, NC 28540

**Appellant**

Melody Rodgers
201 W. Bayshore Blvd.
Jacksonville, NC 28540



7020 1810 0000 9636 8120

Fourth Circ
Lewis F. Pow
1100 East
Suite 501
Richmond, V




RDC 20

23219

U.S. POSTAGE PAID
FCM LG ENV
JACKSONVILLE, NC
28540
FEB 01, 23
AMOUNT

**$6.85**

R2305K132943-06

wit Court of Appeals
ell Jr. Courthouse & Annex

Main St.

A 23219

RECEIVED
U.S. MARSHALS